UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMCO ENERGY, INC; fka CAPCO OFFSHORE, INC., *et al*, | § § § | |
| Appellants, | § | |
| VS. | § § | CIVIL ACTION NO. H-10-3846 |
| TANA EXPLORATION COMPANY, *et al*, | § § | ADVERSARY NO. 08-3310 |
| Appellees. | § § | |

**MEMORANDUM AND ORDER**

**I.   INTRODUCTION**

Before the Court is the appellants, Amco Energy, Inc., f/k/a Capco Offshore, Inc., and Capco Energy, Inc.'s ("Capco") appeal from an bankruptcy adverse ruling in adversary proceeding number 08-3310, that arises from bankruptcy cause number 08-32282-H2-11.  Capco has filed its brief. [Dkt. No. 6].  And, as well, the appellees, Ryder Scott Company, L.P., ["Ryder"], Tana Exploration Company LLC, TRT Holdings, Inc. "[Tana"] and Tristone Capital, LLC ["Tristone"] have filed their respective briefs in response. [Dkt. Nos. 9 and 10, respectively].  The Court's jurisdiction over this appeal is not in dispute.  *See* 28 U.S.C. §§ 158(a)(1) and (c)(1)(A).  This Court has reviewed the record provided, and the bankruptcy court's decision and determines that the relief sought by Capco should be denied and that the bankruptcy court's judgment should be affirmed.

**II.   FACTUAL BACKGROUND**

The facts underlying this dispute are relatively undisputed.  Capco accuses the appellees of committing fraud, negligent misrepresentation, and various business torts arising out of the purchase of certain oil and gas reserves located in the Gulf of Mexico, and owned by Tana.  The

acquisition consisted of 13 Gulf of Mexico properties that Tana desired to sell. In preparation for a sale, Tana employed the services of Triston as its investment advisor and agent for marketing the properties. Tana also employed the services of Ryder, which provided an estimate of the remaining volumes of oil and gas reserves, future production and potential income.

Based in part on the Ryder reserves report provided on or about April 1, 2006, Capco executed a Purchase and Sale Agreement with Tana on June 2. Within a week, Capco and its lender met with Ryder regarding the properties and employed Ryder to present "a detailed presentation" concerning the "data underlying [the] report, including geologic maps, well log reports and similar documents." In turn, Ryder submitted an invoice to Capco for its preparation and presentation and Capco paid the fee. However, the invoice did not cover any of the services that had been provided to Tana and necessary in preparation of the reserves report.

On August 31, 2006, Tana and Capco closed the transaction and employed Ryder to prepare a projection reserves report on the 13 properties as of December 31, 2006. According to Capco, Ryder's report was "significantly and materially less than [the figures] reflected in the earlier April 1, 2006, report." Capco complains that even after taking into account intervening production and forecast declines, the "proved reserves" were significantly below those upon which it relied on August 31. As a result of the shortfall, Capco filed for bankruptcy and initiated this adversary proceeding.

### III.   CAPCO'S ASSERTIONS – TANA AND RYDER'S RESPONSES

#### A.   *Capco's Contentions*

In three points of error, Capco contends that the bankruptcy court erred: (1) when it found that Capco acquired the Tana properties prior to June 9, 2006, and that it could not have relied on Ryder's "professional services" and/or statements; (2) in holding that Capco did not

engage Ryder to render a professional opinion with respect to the Tana properties; and (3) in holding that the closing occurred prior to August 28, 2006, and therefore, Capco could not have relied on statements made by Tana on or around that date.

### B. Appellees' Combined Contentions

The appellees argue that the Bankruptcy Court did not commit error when it granted summary judgments in their respective behalves. They argue that throughout the negotiation and purchase of the Tana properties, Capco acknowledged and agreed that it was responsible for its own due diligence concerning quality, quantity and recoverability of the oil and gas reserves. The appellees point to the Confidentiality Agreement between Capco and Tana and the Confidential Evaluation Brochure prepared by Ryder, each containing disclaimer language concerning the accuracy, completeness, or materiality of the reserve report(s) and specifically disclaiming that any representations or warranties, concerning the data and materials, were made. As well, the appellees point to language where Capco specifically waives any representations or warranties presumably made by Tana, in particular. The appellees further argue that even if the bankruptcy court committed error in some respect, summary judgment is, nevertheless, appropriate and, therefore, the bankruptcy court's judgment should be affirmed. The Court will review the summary judgment evidence *de novo*. *Guerra v. Lehman Commer. Paper, Inc.,* 2007 U.S. Dist. LEXIS 7940 (S.D. Tex. 2007) (citing *In re CPDC, Inc.,* 337 F.3d 436, 440-41 (5th Cir. 2003)).

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006). Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial."* *Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164. To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

## V.   ANALYSIS AND DISCUSSION

### A.   *No Professional Engineering Relationship Existed Between Capco and Ryder*

In its first point of error, Capco argues that it could and did in fact, rely upon the professional services, information and opinions, rendered by Ryder at the June 9, 2006, meeting. It contends that it had a right to rely upon Ryder's information and opinions because Ryder was paid for the services rendered.  Capco points out that even Ryder described its presentation – "[F]or services rendered in connection with the review of Capco Energy's Reserves and the Tana acquisition reserves with Union Bank of California."  Hence, Ryder asserts that a professional relationship and contract for professional services existed between Capco and Ryder.

Internally, under this point, Capco argues:  that the bankruptcy court misstated the facts concerning the date when the purchase of the Tana properties was consummated.  Capco, argues that it, had the ability to withdraw from the transaction with a minimum loss up to August 31. Thus, it contends the date on which it executed the Purchase and Sale Agreement, was not the closing date; hence it did not become the owner of the Tana properties on April 1.  Assuming that Capco is correct in its assessment of the bankruptcy court's factual findings, that error does not aid Capco cause.

The seminal question that must be addressed is under what circumstances does the agent of one party become the agent of a competing party.  To the point, under what circumstance or legal theory does Ryder stop being the agent of Tana and become the agent of Capco?  The facts are undisputed that Ryder was employed by Tana to review available oil and gas data, geologic maps, well log reports and related documents in preparation of reserves report.  That report became part of the attraction for an industry interested in purchasing the Tana properties.  There is no evidence that Ryder conducted the testing, mapping or other engineering functions that

formed the basis of its analysis. Nor is there evidence that Capco employed Ryder to perform an independent study or analysis. What is true is that Ryder presented to Capco and its financial partner the reserves report that it prepared for Tana concerning Tana's properties. There is no indication in the record, and none argued by Capco, that Ryder performed a separate study for the 13 Tana properties for Capco. All indications are that Capco sought merely a presentation of the Tana properties reserves report, not an independent evaluation and analysis of the geographic or geophysical properties or the existence, quality or quantities of any reserves.

As well, there is no evidence that Ryder's presentation departed from the reports that had been prepared for Tana. Regarding the reserves report, when compared with the presentation, there is no evidence that the presentation embellished the reserves report such that the presentation reached beyond the data. It was well known by the parties, and particularly Capco, that it could not rely upon Ryder to impart an independent evaluation. Ryder was not employed to do so and no legal obligation arose on Ryder's part to do so. Ryder's legal obligation, if any, was to make the presentation that it did, and there is no complaint that it failed in that respect. Capco's effort to elevate the presentation status of Ryder to agent status is nonsensical and finds no basis in fact or law.

Therefore, the Court concludes that the bankruptcy court did not err, as a matter of law, in granting summary judgment in behalf of Ryder. *See In re Scotia Pacific Co. LLC*, 508 F.3d 214, 218-19 (5th Cir. 2007).

### B.   *No Evidence of Reliance on Tana's August 2006 Statement*

Capco entered into a Purchase and Sale Agreement and Confidentiality Agreement with Tana in early April of 2006. These agreements, and particularly the PSA, contain disclaimer language. Specifically, Capco contracts away any claims that it relied upon "the accuracy,

completeness or materiality" of the data provided, whether oral or written.  Section 16.04 of the PSA provides:

> Section 16.04 **DISCLAIMER REGARDING INFORMATION. EXCEPT FOR PURPOSES OF SELLER'S INDEMNITY OBLIGATIONS UNDER THIS AGREEMENT AND OTHER MATTERS AS TO WHICH SELLER HAS REPRESENTED AND WARRANTED OR OTHERWISE AGREED, SELLER HEREBY EXPRESSLY NEGATES AND DISCLAIMS, AND BUYER HEREBY WAIVES, AND ACKNOWLEDGES THAT SELLER HAS NOT MADE, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, RELATING TO (a) THE ACCURACY, COMPLETENESS OR MATERIALITY OF ANY INFORMATION, DATA OR OTHER MATERIALS (WRITTEN OR VERBAL) NOW, HERETOFORE, OR HEREAFTER FURNISHED TO BUYER BY OR ON BEHALF OF SELLER OR (b) PRODUCTION RATES, RECOMPLETION OPPORTUNITIES, DECLINE RATES, GEOLOGICAL OR GEOPHYSICAL DATA OR INTERPRETATIONS, THE QUALITY, QUANTITY, RECOVERABILITY OR COST OF RECOVERY OF ANY HYDROCARBON RESERVES, ANY PRODUCT PRICING ASSUMPTIONS, OR THE ABILITY TO SELL OR MARKET ANY HYDROCARBONS AFTER CLOSING.**

One of the elements of fraud is reliance.  *See Ernst & Young, LLP v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).  The element of reliance was specifically negotiated and Capco chose to waive the element of reliance.  *See Forrest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60 (Tex. 1998).  Moreover, the terms of the PSA presume that Capco will conduct its own independent evaluation of the Tana properties.  Failing to do so, Capco cannot be heard to say it relied upon anyone.  With certainty, there is no evidence, and Capco does not argue, that Tana did any act intended to convince Capco that it should forego its own independent evaluation of the oil and gas reserves.  The record shows that Capco had access to Tana's record, including productivity, revenue and profit report(s).  And, there is no claim that Tana withheld any

information critical to Capco's evaluative process. Therefore, the Court is convinced that the element of reliance cannot be proved.

Capco, nevertheless, argues that Tana's representations on August 28, 2006, concerning the August 2006 revenues was a misrepresentation and, therefore, fraudulent. Here, Capco refers to the deposition testimony of Carl Comstock where Comstock allegedly testified that the August estimate figure was "plucked out of thin air and not based on the 28 days' production data."

The "plucked out of thin air" language is that of Capco. What Comstock provided was an estimate of August revenue based on an extrapolation of the revenues data. Additionally, it was clear to all that the estimate was a gross revenue estimate. Even if this method for estimating the August and/or future revenue was nonsensical, it did not constitute fraud. First, there is no evidence that the figure was anything more than an estimate. Estimates and future predictions or opinions based on information to which Capco had access, cannot constitute false statements, as a matter of law. *See Paull v. Capital Resource Mgmt., Inc.*, 987 S.W.2d 214, 218-19 (TEX. APP. – Austin 1999, pet. denied).

There is no evidence that Tana withheld any information or provided any data that Capco relied upon to its detriment. The evidence is also undisputed that Capco did, in fact, conduct its own independent analysis. As well, Capco's financial source conducted an independent engineering analysis prior to the August 28, closing date. Therefore, Capco's argument that it relied on Tana's future projections of revenue is contrary to its contractual agreement and the facts, as they relate to estimate and projections constituting material representations.

Therefore, the Court is of the opinion that, irrespective as to the accuracy of the bankruptcy court's factual determinations, the proper legal conclusion was reached.

## VI. CONCLUSION

Based on the foregoing analysis and discussion, the Court is of the opinion that the bankruptcy court's judgment should be affirmed.

It is so Ordered.

SIGNED at Houston, Texas this 24th day of March, 2011.

_____
Kenneth M. Hoyt
United States District Judge